**Teresa ALBIZU RODRIGUEZ, et al., Plaintiffs,**

**v.**

**CARLOS ALBIZU UNIVERSITY, Defendant.**

**Civil No. 08–1421 (FAB).**

United States District Court, D. Puerto Rico.

Nov. 10, 2008.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiffs.

Carlos M. Hernandez–Burgos, Reichard & Escalera, San Juan, PR, for Defendant.

## MEMORANDUM AND ORDER

FRANCISCO A. BESOSA, District Judge.

On May 15, 2008, plaintiffs Teresa Albizu Rodriguez ("Albizu–Rodriguez"), her husband Gerardo Rodriguez Menendez ("Rodriguez–Menendez"), and the conjugal partnership Rodriguez–Albizu, filed an amended complaint against defendant Carlos Albizu University ("CAU"), alleging that plaintiff Albizu–Rodriguez faced harassment, discrimination, and eventual discharge from her employment based in part upon her age and gender.[1] (Docket No. 4.) Plaintiffs bring their claims pursuant to Title VII of the Civil Rights Act of 1964 and the Equal Pay Act, as well as under Puerto Rico law. (*Id.*, p. 4.)

On July 17, 2008, defendant filed a motion requesting transfer of the case for *forum non conveniens* to the Southern District of Florida. (Docket No. 11.) On August 11, 2008, plaintiffs filed an opposi-

1. The original complaint was filed April 11, 2008. (Docket No. 1.)

tion. (Docket No. 16.) On August 22, 2008, defendant replied. (Docket No. 19.)

For the reasons stated below, defendant's motion to transfer is **DENIED.**

## I. FACTUAL BACKGROUND

Plaintiff Albizu–Rodriguez is a 50–year–old resident of the State of Florida. (Docket No. 4, p. 3.) She is the daughter of the founder and first president of CAU, sister-in-law of another former CAU president, and wife of the former Chancellor of the Miami Campus of CAU (fellow plaintiff Rodriguez–Menendez). (*Id.*, p. 3–4.)

Both plaintiffs worked for the defendant in the Miami Campus. Plaintiff Albizu–Rodriguez worked in various positions, including Special Assistant to the President and University Vice President, from November 15, 1986 to October 12, 2007. (Docket No. 4, p. 4.) Plaintiff Rodriguez–Menendez also held various positions, such as Assistant Professor, Neuropsychology Coordinator, and Chancellor of the Miami Campus, during the period of January 27, 1997 to October 12, 2007. (*Id.*, p. 4.)

Plaintiff Albizu–Rodriguez alleges that unspecified CAU officers constantly made discriminatory and derogatory comments regarding her age, gender, family relationships, and her opposition to defendant's allegedly illegal and fraudulent actions. (Docket No. 4, p. 5.)

Concerning her claim for age-based discrimination, plaintiff Albizu–Rodriguez alleges that unspecified CAU officers commented that she would be discharged and replaced by a younger person. (Docket No. 4, p. 6.) She further alleges that defendant took away several of her functions and duties and assigned them to younger employees, such as Sylvia Lopez, who replaced her after her termination. (*Id.*, p. 6 & 8.)

In regards to her claim for gender-based discrimination, plaintiff Albizu–Rodriguez alleges that defendant provided better compensation to male employees who performed the same functions and duties that she did. (Docket No. 4, p. 6.)

As to the family relationships, plaintiff Albizu–Rodriguez alleges that unspecified CAU officers told her that her husband would be discharged because they did not want anybody related to the Albizu family working at CAU. (Docket No. 4, p. 5.)

Plaintiff Albizu–Rodriguez also alleges that unnamed CAU officers (1) excluded her from meetings and the decision-making process of several programs under her management; (2) disregarded her input and advice; (3) negatively criticized her performance; (4) threatened her with demotion, reduction of salary and benefits, and even termination of employment; (5) increased her workload while decreasing her personnel and reducing the time allotted to complete her duties; and (6) even threatened her life.[2] (Docket No. 4, p. 5–7.)

Plaintiff Albizu–Rodriguez claims that she complained to unspecified CAU officers, but that they never took any type of corrective action. (Docket No. 4, p. 7.) Consequently, she filed a discrimination charge before the E.E.O.C. (*Id.*, p. 7.) Plaintiffs allege that after filing the discrimination charge, the discriminatory and derogatory comments continued, and unspecified CAU officers even commented that plaintiff Albizu–Rodriguez would be either demoted or discharged because of the discrimination charge she filed. (*Id.*, p. 7.) The discrimination allegedly height-

2. Specifically, plaintiffs allege that the Director of Education Programs threatened the life of Albizu–Rodriguez. (Docket No. 4, p. 7)

ened to the point where an unnamed person associated with CAU informed plaintiff Albizu–Rodriguez that she would be demoted from her position of Vice President to an administrative position, entailing a reduction in her salary and benefits. She was also threatened by the same unnamed individual that if she did not accept the demotion she would be discharged. (*Id.*, p. 8.) Plaintiff Albizu–Rodriguez did not accept the demotion, and CAU eventually discharged Albizu–Rodriguez, as well as Rodriguez–Menendez.

## II. DISCUSSION

### A. *FORUM NON CONVENIENS* OR 28 U.S.C. § 1404(a)

In its motion, defendant fuses together the elements of a dismissal for *forum non conveniens* with those for a transfer pursuant to 28 U.S.C. § 1404(a). Other district courts have done the same on occasion, but the majority distinguish between the two grounds for transfer. *See* 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3828 (3d ed. 2008). The doctrines appear similar and may be easily confused, but they are distinct.

*Forum non conveniens* is an "ancient judicially created doctrine" under which a district court may, within its discretion, *dismiss* a case if the chosen forum, although a proper venue, is inconvenient. *See* 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3828 (3 ed. 2008). This dismissal doctrine applies with few exceptions only in cases where the alternative forum is abroad. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 127 S.Ct. 1184, 1190, 167 L.Ed.2d 15 (2007).

While *forum non conveniens* is a dismissal doctrine, section 1404(a) allows a federal court to transfer a case to another judicial district rather than dismissing it. The Supreme Court has adopted the distinction drawn by the Third Circuit:

> The *forum non conveniens* doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. Section 1404(a) avoids this latter danger.

*Norwood v. Kirkpatrick*, 349 U.S. 29, 31, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (quoting *All States Freight v. Modarelli*, 196 F.2d 1010, 1011 (3d Cir.1952)) Accordingly, where a plaintiff requests transfer from one federal district court to another, the request should be analyzed under section 1404(a) and not under the doctrine of *forum non conveniens.*

Because CAU requests a transfer to the Southern District of Florida rather than a dismissal, this court shall analyze defendant's motion under 28 U.S.C. § 1404(a).

### B. TRANSFER PURSUANT TO 28 USC § 1404(a)

Section 1404(a) permits a district court to transfer any civil action to any other district where it might have been brought for the convenience of the parties, witnesses, and in the interest of justice. 28 U.S.C. 1404(a). Congress adopted this statute "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unneces-

sary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)(quoting *Continental Grain Co. v. The Barge F.B.L.-585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

■ In a motion to transfer under section 1404(a), there is a presumption in favor of plaintiff's choice of forum; thus, the party seeking transfer has the burden of proof. *Coady v. Ashcraft & Gerel,* 223 F.3d 1, 11 (1st Cir.2000)(citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The district court must decide the issue after considering and balancing a number of case-specific factors. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). The First Circuit Court of Appeals has held that the following factors should be considered: (1) the convenience of the parties and the witnesses, (2) the availability of documents, (3) the possibility of consolidation, and (4) the order in which the district court obtained jurisdiction.[3] *Coady,* 223 F.3d at 11; *Cianbro Corp. v. Curran-Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir.1987).

■ The first factor is composed of two parts. The first part, the convenience of the parties, weighs in favor of transferring the case to the Southern District of Florida. The parties in this case are located in Florida. Plaintiffs are residents of the State of Florida, and worked and lived in Florida at the time of the alleged events, and appear to continue to reside there. (Docket No. 4, p. 3, ¶ 1 & 2; Docket No. 11, p. 2.) Defendant is a non-profit educational institution with a campus in Miami, Florida, as well as a campus in San Juan, Puerto Rico. (Docket No. 11, p. 2.)

The second part, the convenience of the witnesses, does not weigh in favor of transferring the case to the Southern District of Florida. Defendant claims that because the alleged discriminatory events took place at the Miami Campus, the majority of the witnesses must be employees or former employees of the Miami Campus in Florida. (Docket No. 11, p. 6.)[4] Nonetheless, the defendant fails to identify any witnesses. Plaintiffs, on the other hand, claim that most of their witnesses are employees and officers from the San Juan Campus, such as the University President, the Board of Trustees, plaintiffs' supervisors, and plaintiff Albizu-Rodriguez's replacement. (Docket No. 16, p. 6.) In their motions, the parties do not name any specific witnesses, rather their language is generic. Neither party has informed the Court of the names of the likely witnesses, let alone where those individuals reside or work, or how their participation would be material to the case. The record is even unclear as to which individuals allegedly took discriminatory acts against the plaintiffs other than the Director of Education Programs.[5] Therefore, the Court is in no position to decide whether it would be more convenient to the likely witnesses to hold trial in Puerto Rico or in Florida.

3. Federal courts utilize different factors to decide a motion for transfer pursuant to section 1404(a). *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3847 (3 ed. 2008). Some courts divide their factors into private and public categories, as is done in considering a motion to dismiss for *forum non conveniens. Id.* Other circuit courts, including the First Circuit Court of Appeals, do not.

4. Defendant has offered travel arrangements for any person living in Puerto Rico that the plaintiff is interested in deposing, such as CAU's President.

5. The parties have not informed the Court as to the location of this individual.

The second factor, the availability of documents, does not weigh in favor of transferring the case to the Southern District of Florida because it is insufficiently developed. The plaintiffs and the defendant do not mention any specific documents relevant to the case. Both parties agree that some relevant documents are housed in the Miami Campus. (Docket No. 11, p. 6; Docket No. 16, p. 6.) Defendant claims that the majority of the evidence is located in the Miami Campus. (Docket No. 16, p. 6.) Plaintiffs allege that a majority of the relevant documentation is in the San Juan Campus (Docket No. 16, p. 6.), and that the great majority of the Miami documents are available in electronic format, and can be transmitted easily. (Docket No. 16, p. 6.) In sum, it is unclear to the Court what documents are likely to be material, and where the majority of the documents or other sources of evidence are located.

The third factor, the possibility of consolidation, also does not weigh in favor of transferring the case to the Southern District of Florida. The defendant informed the Court in its motion that another case, involving plaintiffs Rodriguez–Menendez and the conjugal partnership of Albizu–Rodriguez, as well as defendant CAU, was pending in the Southern District of Florida at the time their motion was filed. This matter reportedly involves a breach of contract, and breach of the covenant of good faith and fair dealing. (Docket No. 11, p. 1–2.) The defendant claims that the parties agreed to settle that litigation, but that the court hearing that case had not yet dismissed it. (Docket No. 11, p. 2.) If the case has since been dismissed, then there is no possibility that the two cases will be consolidated. Even if the settlement was rejected and the case were still pending, this Court needs more information about the case pending in the Southern District of Florida to make an informed decision concerning the possibility of consolidation.

The fourth factor, the order in which the district court obtained jurisdiction, does not weigh in favor of transferring the case to the Southern District of Florida. A principal concern related to this factor is "preventing duplication of effort and incompatible rulings." *Coady,* 223 F.3d at 11. The First Circuit Court of Appeals has held that "where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." *Cianbro Corp.,* 814 F.2d at 11 (citing *Codex v. Milgo Elec. Corp.,* 553 F.2d 735, 737 (1st Cir.1977)); see also, *Coady,* 223 F.3d at 11.

In this case, the Court is unaware of any other identical action proceeding in the Southern District of Florida or elsewhere. As discussed above, the defendant claims that two of the plaintiffs are currently litigating against it in the Southern District of Florida, but adds that the parties are expecting a dismissal based upon a settlement reached by the parties. (Docket No. 11, p. 5.) In addition, the description provided by the defendant of that case suggests that it is not identical or even similar to this one. The defendant has not provided sufficient information to the Court about the concurrent litigation, the witnesses, or the documents for the court to construe this factor as favoring transfer. Thus, defendant has not met its burden of proof, and the presumption in favor of plaintiffs' choice of forum remains in effect.

After analyzing the compendia of factors, three of the four factors weigh against transferring the case to the Southern District of Florida. On the record before the Court, only the convenience of

the parties favors transfer of the case. This factor alone is not sufficient to trigger transfer of the case when considered alongside the other factors discussed above. Nor does it overcome the presumption in favor of plaintiffs' choice of forum. Thus, defendant has not convinced the Court that the Southern District of Florida will best serve the convenience of the parties, witnesses, and the interest of justice as required by 28 U.S.C. § 1404(a).

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's motion. The case shall **NOT BE TRANSFERRED** to the Southern District of Florida.

**IT IS SO ORDERED.**